# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES FIDELITY &
GUARANTY COMPANY,

                **Plaintiff,**

-vs-                                  Case No.  6:06-cv-1180-Orl-31UAM

LIBERTY SURPLUS INSURANCE
CORPORATION and UNITED STATES
FIRE INSURANCE COMPANY,

                **Defendants.**

_____

LIBERTY SURPLUS INSURANCE
CORPORATION,
                **Third Party Plaintiff,**
vs.

AEICOR METAL PRODUCTS, INC.,
MOSS WATERPROOFING & PAINTING
CO., INC., FARRIS GYPSUM FLOORS OF
FLORIDA INC., ST. PAUL TRAVELERS,
COMMERCIAL UNION INSURANCE
COMPANY, AND AUTO-OWNERS
INSURANCE COMPANY,

                **Third Party Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment as to

Applicable State Law (Doc. 194) filed by Defendant Liberty Surplus Insurance Corporation

("Liberty"), the response and cross-motion for summary judgment (Doc. 225, 231), filed by the

Plaintiff, United States Fidelity & Guaranty Company ("USF&G"), and Liberty's response (Doc. 242) to the cross-motion.

## I.      Background

Liberty issued a commercial general liability ("CGL") policy[1] (henceforth, the "Callahan Policy") to John T. Callahan & Sons, Inc. ("Callahan"), a general contractor incorporated in Massachusetts.  Callahan, which had its primary offices in Massachusetts, served as the contractor for construction of a Florida apartment complex called the Westlake Apartments.  After construction was completed, Westlake's owner initiated an arbitration proceeding against Callahan for alleged construction defects.  Liberty declined to defend or indemnify Callahan.  Callahan and its surety, USF&G, eventually settled the owner's claim for approximately $8 million.  USF&G then filed the instant suit, seeking to recover the $8 million and alleging that Liberty breached the Callahan Policy by failing to defend and indemnify Callahan.  Before reaching the merits of this diversity dispute, the Court must decide which state's law governs the Callahan Policy.

## II.     Standards

## A.      Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1]Liberty issued two policies to Callahan that are at issue in this suit, but the parties have not identified any way in which they differ for choice of law purposes.  Therefore, for simplicity's sake, this opinion will refer to the policies in the singular.

The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**B.    Choice of Law**

A federal district court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). In Florida, the rights and obligations of the parties under an insurance policy are governed by contract law, because they arise out of an insurance contract. *Lumbermens Mut. Cas.*

*Co. v. August*, 530 So.2d 293, 295 (Fla. 1988).  In determining which state's laws applies to contracts, Florida continues to adhere to the rule of *lex loci contractus*.  *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, (Fla. 2006).  "That rule, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.*  "When parties come to terms in an agreement, they do so with the implied acknowledgment that the laws of that jurisdiction will control absent some provision to the contrary.  This benefits both parties, not merely an insurance company." *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988).  *See also Colhoun v. Greyhound Lines, Inc.*, 265 So. 2d 18, 21 (Fla. 1972) (stating that "[W]here the last act necessary to complete the contract is performed, that is the place of the contract").

## III.    Analysis

Liberty contends that all events related to the formation of the Callahan Policy occurred in Massachusetts:  the policy was secured in Massachusetts by a Massachusetts insurance broker, mailed to a Massachusetts address, and paid for with a draft issued from a Massachusetts bank.  As such, Liberty argues, Massachusetts is the state where the Callahan Policy was executed and therefore Massachusetts law applies to its interpretation.

USF&G does not dispute Liberty's characterization of the events related to the formation of the Callahan Policy or the conclusion that it was executed in Massachusetts.  Instead, USF&G argues that Liberty knew when it issued the policy that Callahan was working (or would be working) on a construction project in Florida, and that Florida choice of law principles therefore require the application of Florida law to the Callahan Policy.

USF&G bases its argument on a line of Eleventh Circuit choice of law cases beginning with *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116 (11th Cir. 1990).  In *Shapiro*, the court was called on to determine whether California or Florida law governed interpretation of a "comprehensive multiple risk policy covering insureds in numerous locations, including California, New Jersey, Nevada, and Florida".  *Id.* at 1120.  The tort giving rise to the coverage dispute had occurred on the insured's premises in Florida.  *Id.* at 1117.  The trial court had not made a finding regarding the state of execution of the policy.  *Id.* at 1118.[2]

The *Shapiro* court recognized that Florida courts had traditionally applied what it referred to as "the archaic *lex loci contractus* rule" when confronted with questions regarding the interpretation and validity of a contract.  *Id.* at 1119.  In addition, the *Shapiro* court noted that the Florida Supreme Court had extended the rule of *lex loci contractus* to automobile insurance policies on the grounds, *inter alia*, that allowing one party to modify a contract by moving into another state "'would substantially restrict the power to enter into valid, binding, and stable contracts.'"  *Id.* (quoting *Sturiano*, 523 So. 2d at 1130).  However, the *Shapiro* court found that the rationale supporting the application of *lex loci contractus* in *Sturiano* led to a rejection of that rule in the case before it:

> Using the same reasoning, we believe that if faced with the facts of this case, the
> [Florida Supreme] court would apply Florida law.  While it is true that
> technological advancements encourage migration and transition, it is equally true
> that real property remains stationary and immobile.  Unlike a contract for
> automobile insurance where the location of the insured risk can vary as readily and
> as quickly as an automobile can move, the Associated policy insured against
> occurrences at ... a risk whose location was unchanging.  Because in the case at bar

---

[2]The trial court concluded that the result was the same under Florida law as under California law and therefore there was no need to determine which state's law governed the contract.  *Id.*

the location of the insured risk was stable, any doubt concerning a party's ability to "restrict the power to enter into valid, binding, and stable contracts" is dispelled.

*Id.*

The *Shapiro* court also noted that Florida courts had applied the Restatement (Second) of Conflict of Laws to other areas of the law – going so far as to abandon "the antiquated *lex loci delicti* rule"[3] in favor of the Restatement's "significant relationships"[4] approach for tort actions – and concluded that applying the principles of the Restatement led it to the same conclusion. *Id.* at 1119-20.[5]  Further, the *Shapiro* court found that Florida displayed a strong interest in regulating insurance when the insured risk was located within its borders.  *Id.* at 1121.  Applying these factors, as well as its own "traditional deference to local law in cases involving the adjudication of interests in real property," the *Shapiro* court "hypothesize[d]" that the Florida Supreme Court would apply Florida law to the policy at issue in its case.  *Id.*

---

[3]Under the rule of *lex loci delicti*, the substantive law applicable in tort actions is the state where the injury occurred.  *See Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1000 (Fla. 1980) (abandoning *lex loci delicti* rule in favor of significant relationships test for tort actions).

[4]Generally speaking, the significant relationships test requires application of the law of the state with the strongest links to an event or issue rather than simply the law of the state where it occurred.  *See, e.g.,* Restatement (Second) of Conflict of Laws § 188 (1971) (providing that rights and duties of parties with respect to an issue in contract are determined by local law of state which, with respect to that issue, has the most significant relationship to the transaction and the parties, and directing courts to consider place of contracting, place of negotiation of the contract, place of performance, location of contract's subject matter, and location of the parties in making that determination).

[5]Specifically, the court looked to Section 193 of the Restatement (Second), which provides that multiple risk policies which insure against risks located in several states will likely be interpreted in accordance with the law of the particular state where the damaged property was located.  *Id.* at 1120.

Seven years later, the Eleventh Circuit revisited the issue in *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511 (11th Cir. 1997). The plaintiff in that case, which maintained a toxic waste disposal site in Florida, sought a declaration that Travelers was obligated to defend it against EPA claims. *Id.* at 1514. The policies at issue "covered risks in more than one state" but were alleged to have been executed in Texas. *Id.* at 1515. After reviewing Florida choice of law principles and recent Eleventh Circuit cases on the topic, the *LaFarge* court concluded that "[e]ven if we were not bound by the *Shapiro* court's conclusion that the Florida court would apply the significant relationship test to a contract of insurance on real property in Florida, we find it persuasive and adopt it here." *Id.* at 1516.[6]

The Eleventh Circuit recently reaffirmed its holdings in *Shapiro* and *LaFarge.* In *Great American E&S Ins. Co. v. Sadiki*, 170 Fed. App'x 632 (11th Cir. 2006) (per curiam), the policy at issue was executed in New York but provided coverage on several of the insured's properties throughout the United States, including one in Florida where the defendant was injured. *Id.* at 633. The district court had held that "Florida's choice of law rules mandate the application of Florida law to a dispute over a contract to insure real property located within the state." *Id.* On appeal, the Eleventh Circuit court affirmed, finding that it was bound by its decisions to that effect in *LaFarge* and *Shapiro*.

Liberty argues that the Callahan Policy is not the same sort of contract that was at issue in the *Shapiro* line of cases, and therefore this Court is not bound to follow those precedents. The

---

[6]This Court followed *Shapiro* and *LaFarge* in *Northland Casualty Co. v. HBE Corp.*, 145 F.Supp.2d 1310 (M.D.Fla. 2001), which involved a liability policy that covered hotels in North Carolina, Pennsylvania, and Florida.

Court agrees.  The *LaFarge* court described the policy before it as "a contract of insurance on real property in Florida."  *LaFarge* at 1516.  The *Sadiki* court referred to its policy as "a contract to insure real property located within the state."  *Sadiki* at 633.  In contrast, the Callahan Policy by its terms covers all of Callahan's "operations" rather than real estate.  (Doc. 1-2 at 1).

USF&G points out that Liberty knew before issuing the Callahan Policy that Callahan would be operating in Florida (among other states) during its term.  Because this coverage dispute arises from Callahan's work on real property in Florida, USF&G argues that the Callahan Policy is, at least in pertinent part, a contract to insure an immoveable risk in the state.  Under the *Shapiro* line of cases, however, the dispositive issue is the whether the insured or the risk has the ability to cross state lines, not whether it has actually done so.  *Cf. Shapiro*, 899 F.2d at 1119 (stating that "Because in the case at bar the location of the insured risk was stable, any doubt concerning a party's ability to 'restrict the power to enter into valid, binding, and stable contracts' is dispelled.).  Based on the Court's review of the terms of the Callahan Policy, Callahan had the ability to conduct its operations outside the state of Florida, and therefore *Shapiro* does not apply here.[7]

---

[7]The Court doubts that *Shapiro* and its progeny remain good law. As this Court has previously noted, Florida law has not followed the path predicted in *Shapiro* and its progeny.  Since 1990, the Florida courts have consistently applied the rule of *lex loci contractus* to resolve choice of law issues in insurance policies.  *See, e.g., Bryan v. USAA Cas. Ins. Co.*, 673 So. 2d 72 (Fla. 4th DCA 1996) (applying *lex loci contractus* to Virginia automobile policy); *Johnson v. Allstate Ins. Co.*, 961 So. 2d 1113 (Fla. 2d DCA 2007) (applying *lex loci contractus* to South Carolina automobile policy).

No Florida court has addressed this question squarely.  However, on December 14, 2006 – nine months after the decision in *Sadiki* – the Florida Supreme Court decided *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, (Fla. 2006).  In *Roach*, the Florida Supreme Court reviewed the history of *lex loci contractus* in Florida law, stating that the court had "never retreated from our adherence to this rule in determining which state's law applies in interpreting contracts." *Id.* at 1163.  Although *Roach* was an automobile insurance case, the court did not in any way suggest that its pronouncements were limited to such policies.  The court made it clear that it was addressing "contracts" in general or "insurance contracts" in particular rather than "automobile insurance contracts" or "contracts

-8-

As such, the rule of *lex loci contractus* must be applied to determine which state's laws governs

interpretation of the Callahan Policy.

**IV.      Conclusion**

Under *lex loci contractus*, the law of the state of contracting governs interpretation of the

contract.  USF&G does not contest Liberty's contention that Massachusetts is the state of

contracting for the Callahan Policy.  In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment as to Applicable State Law

(Doc. 194) filed by Defendant Liberty Surplus Insurance Corporation is **GRANTED**, and

---

governing moveable property."  For example, in defining *lex loci contractus*, the court stated that the rule, "as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage."  *Id.*

The *Roach* court noted that it applied different choice of law rules to different areas of the law and had abandoned *lex loci delicti* in favor of the significant relationships test with respect to torts and statutes of limitation.  *Id.*  However, the court noted that in *Sturiano* it had "considered – and rejected – the significant relationships test" for use with respect to "issue[s] of insurance coverage".  *Id.*  In recounting the analysis that led it to reject the significant relationships test, the court reiterated its statement that

> In the case of an insurance contract, the parties enter into that contract with the acknowledgment that the laws of that jurisdiction control their actions.  In essence, that jurisdiction's laws are incorporated by implication into the agreement.  The parties to this contract did not bargain for Florida or any other state's laws to control.  We must presume that the parties did bargain for, or at least expected, New York law to apply.

*Roach* at 1164 (quoting *Sturiano*, 523 So. 2d at 1130).

*Roach* does not explicitly reject *Shapiro*.  Nonetheless, the *Roach* court's pronouncements that *lex loci contractus* applies to all contracts and that parties enter insurance contracts knowing that the laws of the state of contracting will control their actions appear to be incompatible with the *Shapiro* line of cases.  This is particularly true when those pronouncements are combined with the court's acknowledgment that it already considered and rejected (in *Sturiano*) the use of the significant relationships test with respect to insurance contracts.  *Roach* at 1163.

Massachusetts law will govern interpretation of what the Court has designated as the "Callahan Policy". And it is further

ORDERED that the cross-motion for summary judgment (Doc. 225), filed by the Plaintiff, United States Fidelity & Guaranty Company is DENIED. In addition, the Motion for Extension of Time in Which to File Dispositive Motions for Summary Judgment (Doc. 265) filed by Liberty Surplus is GRANTED IN PART and DENIED IN PART. The deadline for dispositive motions will be extended one week – to October 24, 2007 – rather than the 30 days sought by the movant.

DONE and ORDERED in Chambers, Orlando, Florida on October 15, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party