**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES FIDELITY &**
**GUARANTY COMPANY,**

                **Plaintiff,**

-vs-                                                      Case No. 6:06-cv-1180-Orl-31UAM

**LIBERTY SURPLUS INSURANCE**
**CORPORATION and UNITED STATES**
**FIRE INSURANCE COMPANY,**

                **Defendants.**
_____

**LIBERTY SURPLUS INSURANCE**
**CORPORATION,**
      **Third Party Plaintiff,**
vs.

**AEICOR METAL PRODUCTS, INC.,**
**MOSS WATERPROOFING & PAINTING**
**CO., INC., FARRIS GYPSUM FLOORS OF**
**FLORIDA INC., ST. PAUL TRAVELERS,**
**COMMERCIAL UNION INSURANCE**
**COMPANY, AND AUTO-OWNERS**
**INSURANCE COMPANY,**

                **Third Party Defendants.**
_____

# ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 205) filed by Third Party Defendant Farris Gypsum Floors of Florida, Inc. ("Farris"), the response (Doc. 258) filed by Defendant/Third Party Plaintiff Liberty Surplus Insurance Corporation ("Liberty"), and the reply (Doc. 279) filed by Farris.

**I.     Background**

Liberty's insured, John T. Callahan & Sons, Inc. ("Callahan"), served as the general contractor for construction of a Florida apartment complex called the Westlake Apartments. After construction was completed, Westlake's owner initiated an arbitration proceeding against Callahan, complaining of alleged construction defects. Liberty declined to defend or indemnify Callahan. Callahan filed a third party claim against several of its subcontractors, including Farris's successor in interest, alleging that the subcontractors were ultimately responsible for any defects.

In March 2006, Callahan and its surety, United States Fidelity & Guaranty Company ("USF&G"), settled the claims of Westlake's owner for approximately $8 million.[1] Subsequently, Farris and its liability insurer, St. Paul Fire & Marine Insurance Company ("St. Paul"), reached a settlement with USF&G, Callahan and Westlake's owner. The settlement agreement included a mutual release of "all claims, cross-claims, actions, causes of action, ... damages, costs, attorneys' fees and expenses" incurred by Callahan, USF&G, and Westlake's owner "in any way related to (a) the subcontract between Farris and Callahan; and (b) those claims alleged in [the arbitration proceeding]." (Doc. 227-15 at 3). The settlement agreement also included a release of Farris's liability insurers, including St. Paul, from "all claims, cross-claims, actions, causes of action, ... damages, costs, attorneys' fees and expenses" incurred by Callahan, USF&G, and Westlake's owner on account of any damages "arising out of any and all of Farris's work for Callahan at the [Westlake Apartments project]". (Doc. 227-15 at 3-4). The settlement agreement specified that the

---

[1]By virtue of its payment to Westlake's owner, USF&G was subrogated to the position of Callahan against Liberty. In addition, USF&G was assigned the rights and claims of Callahan and Westlake against Callahan's liability carriers.

release covered damages arising out of defects in labor, service or materials furnished by Farris, as well as damages to the Westlake Apartments caused by the defective labor, service or materials. (Doc. 227-15 at 4).

After the settlement with Westlake's owner, USF&G was able to recoup approximately $1 million of the settlement amount from other sources.  In August 2006, USF&G filed the instant suit, alleging that Liberty breached its policy by failing to defend or indemnify Callahan and seeking to recover the remaining $7 million.  For its part, Liberty filed third party claims against a number of the subcontractors on the Westlake Apartments project, including Farris, and their insurers.  Farris now seeks summary judgment on the grounds that the release it entered into with Callahan, USF&G, and Westlake's owner – henceforth, the "Release" – bars Liberty's claims against it.

## II.     Standards

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c).  Which facts are material depends on the substantive law applicable to the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and

citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

**III.   Analysis**

In its Second Amended Third Party Complaint (Doc. 170-2), Liberty includes four counts targeting Farris: Count XXI, breach of contract for defective work; Count XXII, breach of contract for failure to obtain insurance; Count XXIII, indemnification; and Count XXIV, equitable subrogation. Farris seeks summary judgment as to all four counts. In its response to Farris's motion, Liberty admits that Farris did obtain insurance and that summary judgment is appropriate as to Count XXII. (Doc. 258 at 4). In addition, Liberty makes no effort to defend Count XXI or Count XXIII. This leaves only the equitable subrogation claim – Count XXIV.

Under Florida law, subrogation

> is an equitable doctrine whereby the initial tortfeasor/defendant is placed "in the shoes" of the plaintiff. It is a legal device founded on the proposition of doing justice without regard to form, and was designed to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another.

*Underwriters at Lloyds v. City of Lauderdale Lakes*, 382 So. 2d 702, 704 (Fla. 1980) (internal citation and quotations omitted). Thus, for Liberty to prevail on its subrogation claim against Farris, there would have to be a determination that Liberty is liable to Callahan/USF&G and that at least some of that liability resulted from Farris's work.

It is well settled that the person discharging the debt – the subrogee – stands in the shoes of the person whose debt has been discharged – the subrogor. The subrogee "must exercise such rights under the same conditions and limitations as were binding on the [subrogor], and hence, can be subrogated to no greater rights than one in whose place he has substituted." *Jones v. Bradley*, 366 So. 2d 1266, 1267 (Fla. 4th DCA 1979). Thus, a release executed by an insured in favor of a wrongdoer generally extinguishes the insurer's subrogation rights against that wrongdoer. *See, e.g., Lincoln Nat. Health and Cas. Ins. Co. v. Mitsubishi Motor Sales of America, Inc.*, 666 So. 2d 159, 163 (Fla. 5th DCA 1995) (stating "We think the law is clear that if one who sustains the loss as the result of negligence or wrongdoing of another releases the tortfeasor, an insurer subrogated to the right of the injured party is barred by that release" and listing cases).

Liberty does not dispute that Callahan, USF&G and Westlake's owner completely released Farris from any claims they might have against it, and that the Release, if effective, is fatal to any subrogation claim Liberty might have against Farris. Florida law recognizes an exception to the general rule regarding releases and subrogation, however: "[A] settlement executed by the insured cannot act as a bar to an action for subrogation by the insurer against a third-party tortfeasor if, prior to the settlement, the tortfeasor learns of the insurer's perfected subrogation rights." *Lincoln Nat. Health and Cas.* at 163. The reasoning behind this exception is fairly straightforward: "A tortfeasor cannot expect to rely on a release from the victim if he knows that equity has transferred

a portion of the victim's claim of recovery into the hands of a third party who has paid a part of what the tortfeasor by rights should pay." *Id.*

Liberty contends that the exception applies here and that its claim against Farris is not barred. However, Liberty's subrogation rights have not been perfected, because Liberty has not paid any money to Callahan/USF&G. Liberty argues that perfection is not required, and that the exception applies whenever the wrongdoer "knows of the existence of subrogation rights at the time the release was executed." In support of this notion, Liberty points to cases in which the courts allowed insurers to plead subrogation claims against alleged wrongdoers before making any payment to their insureds. *See, e.g.*, *Attorneys' Title Ins. Fund, Inc. v. Punta Gorda Isles, Inc.*, 547 So. 2d 1250 (Fla. 2d DCA 1989) (holding that Fla.R.Civ.P. 1.180(a) permits filing of third-party subrogation claim by defendant before defendant's liability is established). Liberty argues that this demonstrates that the right of subrogation can exist prior to payment and that, as a result, the Release would not extinguish Liberty's subrogation rights if Farris merely knew that Liberty *could have* a subrogation claim arising from the Westlake Apartments project.

The cases cited by Liberty, however, simply discuss whether an insurer can file a contingent third-party subrogation claim in the initial suit between itself and its insured or whether it must wait until its liability is established (i.e., by judgment or settlement) to file its subrogation claim, perhaps in a separate suit. The fact that some Florida courts permit the filing of *contingent* subrogation claims[2] in no way suggests that *unperfected* subrogation claims survive a release

---

[2]Florida's Third District Court of Appeal holds that an insurer has no cause of action for subrogation until it settles or is held liable on its insured's claim. *See Quinones v. Florida Farm Bureau Mut. Ins. Co.*, 366 So. 2d 854, 855 (Fla. 3d DCA 1979).

executed by the insured. Florida law permits the filing of contingent subrogation claims because it is more convenient than requiring a second suit and because Fla.R.Civ.P. 1.180(a) permits a defendant to implead a person who "*may be* liable to the defendant for all or a part of the plaintiff's claim against the defendant." *Attorneys' Title Ins. Fund* at 1251. A wrongdoer can not acquire an effective release from a victim whose claim has been paid by its insurer because once that payment is made, the insurer rather than the victim "owns" the claim and controls its disposition. *Lincoln Nat. Health and Cas.* at 163.

Until that payment has been made, the victim/insured remains free to dispose of its claim however it wishes. Liberty made no such payment in this case. As a result, the exception does not apply, and the Release bars any subrogation claim Liberty might have against Farris.

## IV.   Conclusion

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 205) filed by Third Party Defendant Farris Gypsum Floors of Florida, Inc. is **GRANTED**, and all pending claims against Farris are **DISMISSED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 24, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party